# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael R.,**
**Petitioner Below, Petitioner**

**vs)  No. 18-0679**      (Raleigh County 18-C-311-D)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**November 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael R.,[1] pro se, appeals the July 12, 2018, order of the Circuit Court of Raleigh County dismissing his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[2] by counsel Holly M. Flanigan, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2014 and 2015, petitioner perpetuated various sexual acts on his nine-year-old adopted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Since the filing of the appeal in this case, the superintendent at Mt. Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

1

daughter and also photographed her in engaging sexually explicit conduct. On September 15, 2015, petitioner was indicted on four counts of first-degree sexual assault, four counts of incest, seven counts of sexual abuse by a parent, three counts of first-degree sexual abuse, and fourteen counts of filming a minor child engaging in sexually explicit conduct. In an additional count of the indictment (count thirty-three), the grand jury alleged that the victim was a child under twelve years of age, that petitioner was an adult over twenty-one years of age, and that petitioner employed forcible compulsion in his perpetuation of the charged offenses.[3] According to respondent, if petitioner was convicted of all the offenses alleged in the indictment, petitioner would have received an aggregate sentence of 205 to 815 years of incarceration.

On October 7 and 20, 2015, petitioner underwent a court-ordered psychological evaluation to determine his criminal responsibility for the alleged acts and his competency to stand trial. In a report dated November 18, 2015, the forensic psychologist opined that petitioner suffered from no mental disease or defect which would have rendered him unable to appreciate the wrongfulness of the alleged acts and/or conform his conduct to the requirements of the law. The psychologist further opined that petitioner was competent either to stand trial or enter into a plea agreement with the State:

> . . . [petitioner] has the capacity to assist his attorney in his defense with a reasonable degree of rational and factual understanding of the charges against him, their potential consequences, and the nature and object of the adjudicatory process. He has the capacity to understand and agree to the terms of a plea agreement if one is offered to him and should be able to follow the directives of the [c]ourt.

On January 6, 2016, petitioner and the State entered into a plea agreement, under which petitioner agreed to plead guilty to counts one and four of the indictment charging him with first-degree sexual assault. Petitioner further agreed to admit the facts alleged in count thirty-three rendering him ineligible for alternative sentencing. In exchange, the State agreed to dismiss the other thirty counts of the indictment. Under West Virginia Code § 61-8B-3(c), counts one and four each subjected petitioner to a sentence of 25 to 100 years of incarceration; under the plea agreement, the circuit court would decide whether petitioner would serve those sentences concurrently or consecutively with each party free to argue that issue.[4]

At the beginning of the February 11, 2016, plea hearing, the circuit court noted that "the only issue at sentencing will be whether the sentences are to run concurrently . . . or consecutively[.]" After petitioner was sworn, the circuit court advised him to let the court know if he needed clarification on any issue during the hearing.

---

[3]Petitioner was either forty-three or forty-four years old at the time of his offenses. For a person to be ineligible for alternative sentencing, West Virginia Code § 61-8B-9a provides that the person must be over "eighteen years of age." Therefore, in alleging that petitioner was over twenty-one years of age, the grand jury alleged more than what was required by the statute.

[4]The plea agreement further provided that petitioner register as a sex offender for life and serve fifty years of supervised release should he be released from incarceration.

Because petitioner is illiterate, the court confirmed that petitioner's counsel read the indictment and the plea form to him in their entirety. The court noted that petitioner faced a sentence of 25 to 100 years of incarceration for each count to which he was pleading guilty, emphasizing that the only issue at sentencing would be a determination of whether those sentences would run concurrently or consecutively. Petitioner acknowledged that he understood the limited issue that his sentencing would entail.

The circuit court asked petitioner whether he had sufficient time to discuss the matter with his counsel, and petitioner answered, "Yes, sir." Petitioner further testified that he did not have any present complaints regarding counsel's performance. The court further inquired: "Do you feel that, at least up until now, [counsel] has done everything reasonably possible to represent you in this matter?" Petitioner responded, "Yes, sir."

The circuit court then asked petitioner if he suffered from any mental health issues, and petitioner answered that he had previously been diagnosed with a learning disability. When the court inquired about any medications petitioner was taking, petitioner responded that he was taking Lithium. The court followed up by asking petitioner the number of times he took his medication daily and its potential effects on him:

Q. All right. Is Lithium the only medication you're taking now?

A. Yeah. It's the only one they will give me.

Q. Are you taking that in the morning? Or at the evening time? Or at both times?

A. Both times, sir.

Q. Have you taken one medication dose today?

A. Yes, sir.

Q. Do you take this Lithium pursuant to your prescribed dosage?

A. Yes, sir.

Q. You don't abuse it?

A. No, sir.

Q. Does this Lithium cause you to be nervous, upset[,] or distraught?

A. No, sir.

Q. In fact, does it calm you down and help you to be able to think more clearly?

3

A. Yes, sir. It keeps me calm.

Q. Naturally, people that come [into] criminal court are nervous and apprehensive and have some anxiety. That's to be expected. Anybody that would do that would feel that way. What I want to guard against is somebody coming in that is so upset and so filled with anxiety that they can't reason or think properly. Would you be in that category? Do you believe that you can't reason or think or understand?

A. No, sir.

The circuit court stated that it did not have a copy of the November 18, 2015, report at the bench. Both the State's counsel and petitioner's counsel confirmed that the psychologist opined that petitioner was criminally responsible for the alleged acts and competent to either stand trial or enter into a plea agreement. Thereafter, the court resumed its questioning of petitioner by inquiring: "Based upon your reflection and your conversations with [counsel], do you believe that this plea agreement that has been spread upon the record is in your own best interest?" Petitioner answered, "Yes, sir." Petitioner further testified that he was not being coerced into pleading guilty and that he was not being promised anything improper, such as money, to do so.

The circuit court next reviewed the rights petitioner would be giving up by pleading guilty, such as the right to have a jury trial, the right to have the State prove its case beyond a reasonable doubt, and the right to stand silent or testify in his own defense. The court further advised petitioner that he had the right to suppress any illegally obtained evidence, but that he would lose the right to appeal any alleged pretrial and trial errors if he pled guilty. However, the court informed petitioner that he had "an absolute right" to appeal "any conviction and for any so-called errors of law" and that the appeal process was initiated by filing the appeal before the West Virginia Supreme Court of Appeals. The court asked whether petitioner understood its explanation of his rights and the rights he would be giving up by pleading guilty, to which petitioner responded, "Yes, sir."

The court inquired if petitioner was pleading guilty "in regard to these two counts of first[-]degree sexual assault because [petitioner was,] in fact[,] guilty of committing these crimes." Petitioner answered, "Yes, sir." The court requested that the State provide the factual basis for the counts to which petitioner was pleading guilty. The State advised that petitioner's crimes were discovered when his former wife, the victim's mother, found a picture of the victim on petitioner's phone "with the little girl naked from the waist down." The victim was subsequently interviewed. The victim reported that, on at least five occasions, petitioner "forced her to engage in oral sex by placing his penis in her mouth" and "also described repeated instances of [petitioner] penetrating her vagina with his fingers and . . . penetrating her vagina with his penis." The State advised that there was forcible compulsion given the victim's statements that what petitioner did to her "hurt her" and made her cry. The State further proffered that petitioner threatened the victim that, if she told anyone of his acts, "he would go to jail for the rest of his life and . . . she was to keep it a secret." The State advised that, in a voluntary statement, petitioner "admitted that he . . . committed multiple acts of first[-]degree sexual assault by forcing the [victim] to perform oral sex on him" and "also admitted to penetration." The State further advised that there was sexual gratification

4

given the victim's description of petitioner ejaculating on multiple occasions. Finally, the State noted that the acts alleged in the indictment occurred at petitioner's home.

The circuit court inquired whether petitioner agreed with the factual proffer by the State. Petitioner stated that the proffer was "totally incorrect." When the court sought clarification, petitioner admitted to performing the sexual acts on the victim, but denied doing so by force. The court concluded that the State provided an adequate factual foundation for petitioner's proposed guilty pleas:

A. I didn't never force nothing.

Q. All right. So[,] it's your contention that you never forced [the victim] to perform any sexual act?

A. No, sir.

Q. But, nevertheless, despite that contention on your part, everything else that [the State] said occurred?

A. Yes, sir.

Q. All right.

THE COURT: The [c]ourt believes that the elements of the crimes have been sustained and can be satisfied.

The State requested that the circuit court make the specific findings necessary to render petitioner ineligible for alternative sentencing pursuant to West Virginia Code § 61-8B-9a. The court did so, finding that the victim was a child under twelve years of age, that petitioner was an adult over twenty-one years of age, and that petitioner employed forcible compulsion in his perpetuation of the charged offenses. The court asked petitioner if he objected to these findings. Consistent with the plea agreement, petitioner stated that he had no objection.

The circuit court specifically advised petitioner that he must appreciate that he faced the prospect of being sentenced "for the rest of [petitioner's] life." Once again, the court cautioned petitioner that the only issue the court would address at sentencing would be whether petitioner serves his sentences concurrently or consecutively and inquired if petitioner understood. Petitioner answered, "Yes, sir." The court asked petitioner if he had "any questions about any of the material that we have covered so far." Petitioner responded in the negative. In conclusion, the court inquired: "Do you still wish to enter your pleas as we have discussed?" Petitioner answered, "Yes, sir."

Thereafter, petitioner pled guilty to counts one and four of the indictment, charging him with first-degree sexual assault. The circuit court found that petitioner was competent to enter the guilty pleas based on the findings set forth in the psychological evaluation report. The court

determined that petitioner voluntarily, knowingly, and intelligently entered the pleas. The court further found that petitioner understood his trial rights and "knowingly and intelligently waived all of those constitutional rights explained to him on this record." The court asked petitioner whether he wanted to withdraw his guilty pleas "for any reason whatsoever." Petitioner responded, "No, sir." Accordingly, the court adjudicated petitioner guilty of two counts of first-degree sexual assault.

At a March 24, 2016, sentencing hearing, petitioner's counsel argued for concurrent sentences while the State argued in favor of consecutive sentences. During its argument, the State noted that, on the questionnaire petitioner filled out as a part of the presentence investigation report, petitioner stated that his conduct had no effect on the victim given that "she came on to [sic] [petitioner]." The State further noted that, in a written statement to the court, the victim asked that petitioner receive the maximum sentence possible. The victim's mother gave an oral statement asking that the circuit court impose consecutive sentences. Thereafter, the court sentenced petitioner to consecutive terms for two counts of first-degree sexual assault for an aggregate sentence of 50 to 200 years of incarceration. Petitioner did not appeal his criminal convictions.

On July 3, 2018, petitioner filed a petition for a writ of habeas corpus, raising four grounds for relief: (1) the circuit court permitted petitioner to enter guilty pleas that were not voluntarily, knowingly, and intelligently made; (2) the circuit court denied petitioner due process of law by not providing him with an adequate competency evaluation; (3) the circuit court failed to advise petitioner of his appeal rights; and (4) petitioner's trial counsel provided ineffective assistance by advising petitioner to accept a plea agreement that effectively imposed a life sentence, neglecting to explain the difference between concurrent and consecutive sentences, and failing to ensure that the circuit court considered the November 18, 2015, psychological evaluation report when the court made its competency determination. In the petition, petitioner conceded that his claims were contradicted by the February 11, 2016, plea transcript in that the circuit court (1) cautioned petitioner that he could spend the rest of his life incarcerated; (2) confirmed the findings set forth in the psychological evaluation report with petitioner's counsel and the State before it made the competency determination; and (3) asked petitioner "the standard questions required by Rule[s] 11[(c) and (d) of the West Virginia Rules of Criminal Procedure]." Petitioner suggested that his sworn testimony at the plea hearing should not be believed given that no defendant answers the "perfunctory question[s]" during a plea colloquy in a manner not expected by the court.

By order entered July 12, 2018, the circuit court noted that it reviewed various documents such as the February 11, 2016, plea transcript; the March 24, 2016, sentencing transcript; and the November 18, 2015, psychological evaluation report and determined that it could rule on petitioner's habeas petition without a hearing and appointment of counsel. The court found that, based on the documentary evidence, each of petitioner's claims lacked merit. Accordingly, the court dismissed the habeas petition. It is from the circuit court's July 12, 2018, order that petitioner now appeals.

In Syllabus Points 1 and 3 of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), we held:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

. . . .

"'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.'" Syllabus Point 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W. Va. 698, 601 S.E.2d 18 (2004).

"West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined." Syl. Pt. 1, *State ex rel. Watson v. Hill*, 200 W. Va. 201, 488 S.E.2d 476 (1997).

On appeal, petitioner argues that the circuit court's July 12, 2018, order should be reversed and that the matter should be remanded for specific findings of fact and conclusions of law relating to each contention raised in his petition, following appointment of counsel and an evidentiary hearing. Respondent counters that the findings set forth in the circuit court's order were sufficient to show that petitioner's habeas petition lacked merit. We agree with respondent and note that claims "without detailed factual support do[ ] not justify the issuance of a writ, the appointment of counsel, and the holding of a hearing." *Losh v. McKenzie*, 166 W.Va. 762, 771, 277 S.E.2d 606, 612 (1981).

Here, the circuit court found that the claims set forth in petitioner's habeas petition lacked sufficient factual support to justify the appointment of counsel or holding an evidentiary hearing given that each claim was contradicted by the documentary evidence, including the February 11, 2016, plea transcript. We concur with the circuit court's determination and find that it is clear that petitioner is entitled to no relief. In the petition, petitioner conceded that his claims were contradicted by the plea transcript and attempted to have the circuit court find merit to the claims simply by suggesting that the court disbelieve his own sworn testimony in the prior proceeding. Based on our review of the record, we find no error. Therefore, we conclude that the circuit court did not abuse its discretion in dismissing the habeas petition as petitioner himself acknowledged that his testimony at the plea hearing substantiated his criminal convictions and sentence.

For the foregoing reasons, we affirm the circuit court's July 12, 2018, order dismissing petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:   November 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

8